### ANTONIO RODRIGUEZ V. THE STATE.

No. 18363. Delivered May 20, 1936.
Rehearing Denied June 17, 1936.

The opinion states the case.

*Schlesinger, Schlesinger & Goodstein,* of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, five years in the penitentiary.

The killing occurred in the nighttime at a gathering of people for a Mexican play. Five shots were heard by a number of witnesses who testified. They all said the shots appeared to be from the same kind of gun. One witness who had experience in such matters testified that all the shots were fired by an automatic pistol. Witnesses also testified that the shooting seemed to take place a short distance from where they were at the time, and that they ran immediately to the place and found deceased holding his hands to his stomach and gasping for breath. If we understand the record, he was shot in four places. The parties who first got to him asked him who shot him, and he replied that Antonio Rodriguez shot him. They asked him where Antonio was and deceased replied that he had run off into the field. Search was made of the immediate vicinity, but no weapons of any kind were found, nor were any found on the person of deceased then or thereafter. Later and at a point not very far distant but over in a road three shells and one bullet were found. Appellant took the witness stand and admitted that he shot deceased, but claimed that he did so after deceased had shot at him twice with a pistol. The State introduced an officer who testified that he obtained from appellant a written confession, which was also introduced in evidence by the State.

We find in the record but two bills of exception, each complaining of the refusal of a motion for an instructed verdict of acquittal, one motion being made at the conclusion of the State's testimony, and the other being made at the conclusion

of the entire testimony. We are not led to believe that the court's action in this regard was reversible error.

In his brief appellant contends, first, that the evidence was insufficient to support the conviction, and, second, that appellant in his confession, which was introduced by the State, made exculpatory statements, and that the testimony did not sufficiently show the falsity of such exculpatory matters related by appellant. These two propositions are related and may be discussed together.

In his confession appellant said that when he got to the meeting that night he met deceased at the gate and deceased called him a vile name, and said "Here is where I want to see you," and "Here is where I am going to kill you," and as he made these remarks he pulled out a pistol. Appellant said he started to run back into the road, but deceased followed him out, and as he did so deceased shot at him twice. Appellant testified as a witness "As he shot at me two times I pulled out one .32 automatic pistol that I had brought with me. At the time I was backing up and way from him and I then fired at him three or four times. After I shot him he did not fall and a lot of the people came out to where we were and I ran to my car and dropped my pistol into my car. * * * I do not deny now that I shot this man Lubardo Ramos." The point at issue is chiefly whether the testimony was sufficient to rebut and overcome the exculpatory statements of appellant in his confession, which was introduced by the State.

Let us briefly review the facts. Appellant said he shot deceased because the latter had just shot at him. Four or five witnesses who searched the ground immediately after the shooting testified that they found no pistol on the person of deceased or on the ground in the vicinity of the trouble. No effort was made to show that deceased owned a pistol, or that he had any that night. The testimony showed that appellant had with him an automatic pistol, and that all five of the shots that were fired were from an automatic. The nearness of witnesses to the scene of the shooting precludes the idea that deceased could have secreted or gotten rid of a pistol if he had had one. These witnesses testified that they were at the scene of the shooting in one minute after it occurred. Some witnesses testified that the shots occurred in rapid succession without any interval. Appellant said in his confession that as deceased shot at him, he pulled out a .32 automatic pistol and fired at deceased three or four times. In his confession appellant further stated certain remarks deceased should have made

to him before the shooting. In his testimony on the trial appellant said:

"I did not see Leobardo until he shot at me at which time he was about five feet away from me but he did not hit me although he shot twice. As to whether or not he had a big gun in his hand I will say I do not know what kind of a gun it was and after he shot at me twice I ran. I knew he was shooting at me with a pistol but I do not know what kind of a gun it was. He ran towards me and I went back. He was standing up shooting at me and then I got my gun and shot at him while he was coming towards me and I was afraid of him. He was still coming towards me when I shot at him."

The State introduced a witness who testified that he was at the place of the shooting on the night of the play and was standing at the gate with Andreas Sanches and deceased came up and the three of them were talking. He said:

"While we were talking I saw a hand pass by me and I saw Leonardo Ramos fall but I could not say who it was that passed there because it was dark. This hand passed in front of me and Leobardo fell down. I heard a lick when Leobardo fell and I turned around to see who it was but I do not know. At that time I ran and while I was running I heard shots fired but I cannot say how many. The sounds of shots came from where I was running."

We are not able to agree with appellant's contention that the testimony is not sufficient to justify the conclusion of guilt, nor that the testimony is not sufficient to show the falsity of the exculpatory statements contained in appellant's confession.

Finding no error in the record the judgment will be affirmed.

*Affirmed.*

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—After a careful re-examination of the record in the light of appellant's motion for rehearing, we are constrained to adhere to our conclusion that the evidence is sufficient to support the judgment of conviction.

The motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.